# United States Court of Appeals for the Federal Circuit

2008-7124

DONALD PHILLIPS,

Claimant,

and

DEJUANNA HARRIS,

Movant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

--------------------------------------------------------------------------------

2008-7142

NATHAN J. DAVIS,

Claimant-Appellant,

and

VALERIE STANBACK,

Movant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.


Eric Alan Shumsky, Sidley Austin LLP, of Washington, DC, argued for all appellants. With him on the briefs were Pankaj Venugopal and Naomi Schoenbaum. Of counsel on the briefs was Barton F. Stichman, National Veterans Legal Services

Program, of Washington, DC. Of counsel on the brief in 2008-7124 was <u>Richard V. Spataro</u>. Of counsel on the brief in 2008-7142 were <u>Christine M. Cote</u> and <u>Louis J. George</u>.

<u>Meredyth Cohen Havasy</u>, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent-appellee in appeals 2008-7124 and 2008-7142. With her on the briefs were <u>Jeanne E. Davidson</u>, Director, and <u>Martin F. Hockey, Jr.</u>, Assistant Director. Of counsel on the briefs was <u>Michael J. Timinski</u>, Deputy Assistant General Counsel, United States Department of Veterans Affairs, Office of the General Counsel, of Washington, DC. Of counsel on the brief in 2008-7124 was <u>Martin J. Sendek</u>, Attorney. Of counsel on the brief in 2008-7142 and of counsel in 2008-7124 was <u>Michael G. Daugherty</u>, Attorney.

Appealed from: United States Court of Appeals for Veterans Claims

Chief Judge William P. Greene, Jr. (2008-7124)
Judge Mary J. Schoelen (2008-7142)

# United States Court of Appeals for the Federal Circuit

2008-7124

DONALD PHILLIPS,

Claimant,

and

DEJUANNA HARRIS,

Movant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
in 05-2404, Chief Judge William P. Greene, Jr.

---------------------------------------------------------------------------------------

2008-7142

NATHAN J. DAVIS,

Claimant-Appellant,

and

VALERIE STANBACK,

Movant-Appellant,

v.

ERIC K. SHINSEKI, Secretary of Veterans Affairs,

Respondent-Appellee.

Appeal from the United States Court of Appeals for Veterans Claims
in 05-1392, Judge Mary J. Schoelen.

DECIDED: September 25, 2009

Before MICHEL, <u>Chief Judge</u>, BRYSON, <u>Circuit Judge</u>, and SPENCER, <u>Chief District Judge</u>.[*]

BRYSON, <u>Circuit Judge</u>.

These two appeals raise questions about the procedures that apply when a veteran who is pursuing a claim for disability benefits dies while his claim is pending. In both cases, the veteran-claimant died while his claim was on appeal before the Court of Appeals for Veterans Claims ("the Veterans Court"). In both cases, the question before us is whether the daughters of the deceased veteran-claimants may be substituted for their fathers so that they can pursue either an "accrued-benefits claim" under 38 U.S.C. § 5121 or a claim for attorney fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. In both cases, the Veterans Court refused to permit substitution, dismissed the veterans' appeals, and denied the EAJA claims.

## Appeal No. 2008-7142

Nathan Davis, a United States Army veteran, filed a claim in 1997 seeking service connection for post-traumatic stress disorder. After multiple proceedings before a regional office of the Department of Veterans Affairs ("DVA") and the Board of Veterans' Appeals, the Board ultimately denied his claim in 2005. When Mr. Davis appealed to the Veterans Court, the Secretary of Veterans Affairs conceded that the

---

[*]   The Honorable James R. Spencer, Chief Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

Board's decision was erroneous in two respects. First, the Secretary conceded that the Board had failed to ensure that the regional office complied with an earlier remand order from the Board. In that order, the Board had directed the regional office to attempt to verify information provided by Mr. Davis as to an in-service stressor. Second, the Secretary conceded that the Board had mistakenly relied on a June 2004 medical examination that was inadequate for rating purposes.

On December 7, 2006, the Veterans Court issued an opinion vacating the Board's decision and remanding the case to the Board for further adjudication. The court agreed with the two points on which the Secretary confessed error. With respect to the first point, the court agreed that the regional office had not sought to verify Mr. Davis's allegations as the Board had directed it to do. With respect to the second point, the court agreed that the medical examiner had erred in concluding that Mr. Davis had never been formally diagnosed with post-traumatic stress disorder and that the examiner had failed to address several of Mr. Davis's alleged stressors. The court issued its judgment on January 3, 2007, and the court's mandate issued on March 9, 2007. Three months later, on April 3, 2007, counsel for Mr. Davis filed an EAJA application for attorney fees and expenses.

Before the court acted on the EAJA application, Mr. Davis's counsel learned that Mr. Davis had died on January 10, 2007, a week after the court entered its judgment in the case. Counsel informed the court of Mr. Davis's death on April 20, 2007, and moved to substitute Mr. Davis's daughter, Valerie Stanback, as the claimant for purposes of pursuing the EAJA claim. At that time, Ms. Stanback stated that there was no person eligible to make a claim for accrued benefits under 38 U.S.C. § 5121. She

argued, however, that the EAJA claim could proceed in her name because the Veterans Court's remand order was a final judgment for purposes of EAJA.

The Secretary opposed both the motion to substitute and the EAJA application. The Secretary asked the Veterans Court to withdraw its judgment and mandate, to vacate the Board's decision, and to dismiss the appeal. In her reply to the Secretary's motion, Ms. Stanback asserted that, in addition to being a proper person to pursue the EAJA claim, she was eligible for accrued benefits under 38 U.S.C. § 5121(a)(6) as the person who bore Mr. Davis's funeral expenses. For that reason, she asserted that she was entitled to substitution as an accrued-benefits claimant under this court's decision in Padgett v. Nicholson, 473 F.3d 1364 (Fed. Cir. 2007).

The Veterans Court granted the Secretary's motion and entered an order withdrawing its judgment and mandate, vacating the Board's decision, and dismissing the appeal. The court stated that because it had vacated the Board's decision, the Board's decision and the underlying regional office decision would have no preclusive effect on the adjudication of any future accrued-benefits claim based on Mr. Davis's entitlements. With respect to the EAJA claim, the court held that in order to be eligible for EAJA fees, an appellant must be a "prevailing party," and that upon the recall of the court's judgment, there was no longer any decision as to which the appellant could be said to be a prevailing party. The court therefore dismissed the EAJA claim.

### Appeal No. 2008-7124

In 1992, Army veteran Donald Phillips filed an application for disability compensation based on a psychiatric disorder. Over an extended period of time, he unsuccessfully attempted to obtain service connection for his disability. The Board of

Veterans' Appeals ultimately denied his claim in May 2005. After Mr. Phillips appealed to the Veterans Court, the Secretary agreed to a joint motion for remand. Accordingly, on November 28, 2006, the parties filed a "Joint Motion for an Order Vacating and Remanding the Board Decision and Incorporating the Terms of this Remand." In the joint motion, the Secretary conceded that the Board had failed to address the significance of evidence potentially favorable to Mr. Phillips's claim. The Veterans Court granted the joint motion to remand on December 7, 2006, in an order that also served as the court's mandate.

Unbeknownst to counsel, Mr. Phillips had died on November 30, 2006, two days after the joint remand motion was filed. After learning of Mr. Phillips's death, his attorney notified the court on January 4, 2007, that Mr. Phillips had died. Counsel then filed an application for attorney fees under EAJA, and Dejuanna Harris, Mr. Phillips's daughter and the representative of his estate, filed a motion seeking to be substituted as the claimant for purposes of pursuing the attorney fee award.

The Veterans Court denied the motion for substitution and instead issued a decision recalling its judgment and mandate. The court also vacated the underlying Board decision and dismissed the appeal. Because the court's actions meant that there was no longer a final judgment upon which to base an EAJA award, the court dismissed the EAJA application.

I

As a general rule, a veteran's claim for disability benefits terminates with the death of the veteran. Richard v. West, 161 F.3d 719, 723 (Fed. Cir. 1998). Consequently, when a veteran-claimant dies during the pendency of proceedings on his

claim, including an appeal to the Veterans Court, no other party is automatically entitled to be substituted on the veteran's claim for benefits. By statute, however, certain successors acquire an interest in the veteran's benefits. In particular, the benefits that accrued during the veteran's last two years and were "due and unpaid" at the time of the veteran's death are referred to as "accrued benefits" and can be claimed by a person who qualifies as a beneficiary under 38 U.S.C. § 5121(a). The statute defines the qualifying benefits as those "to which [the veteran] was entitled at death under existing ratings or decisions or those based on evidence in the file at date of death." Id. Thus, the statute "provides a mechanism for survivors to recover certain benefits the entitlement to which has already been established or can be readily established based on evidence in the file at the date of the veteran's death." Haines v. West, 154 F.3d 1298, 1300-01 (Fed. Cir. 1998). An accrued-benefits claimant may pursue the accrued benefits by filing his or her own claim, which is distinct and separate from the underlying veteran's benefit claim. In certain circumstances, however, we have held that an accrued-benefits claimant may be substituted for the deceased veteran claimant on the disability benefits claim in order to protect the accrued-benefits claimant's legal interests.[1]

When a veteran-claimant dies during the pendency of his appeal to the Veterans Court, the court normally does not allow substitution of an accrued-benefits claimant for

---

[1] Congress has recently enacted provisions to allow substitution of such claimants as a matter of course, but the effective date of those provisions renders them inapplicable to this case. See Veterans' Benefits Improvement Act of 2008, Pub. L. No. 110-389, § 212, 122 Stat. 4145, 4151.

the deceased claimant, but instead vacates the Board decision from which the appeal is taken and dismisses the appeal. In Landicho v. Brown, 7 Vet. App. 42, 54 (1994), the court explained that doing so ensures that the Board decision "will have no preclusive effect in the adjudication of any future accrued-benefits claims derived from the veteran's entitlements." The court stated that when the Board decision is vacated, the accrued-benefits claimant cannot be said to be "adversely affected" by the Board decision and thus does not have standing to pursue an appeal under 38 U.S.C. § 7266(a). 7 Vet. App. at 54.

In Zevalkink v. Brown, 102 F.3d 1236 (Fed. Cir. 1996), this court approved the general procedure employed by the Veterans Court in Landicho. We agreed that when a veteran dies during the pendency of his appeal to the Veterans Court, substitution of an accrued-benefits claimant is ordinarily not appropriate, because the accrued-benefits claim would not be "adversely affected" by the Board's decision on the underlying veteran's disability benefits claim once the Board's decision was vacated. Id. at 1243.

More recently, we have been called upon to decide whether a different rule applies when the underlying disability benefits claim was fully submitted to the Veterans Court at the time of the veteran's death. In Padgett v. Nicholson, 473 F.3d 1364 (Fed. Cir. 2007), the Board of Veterans' Appeals denied Mr. Padgett's disability benefits claim, but the Veterans Court reversed the Board's adverse determination and held that Mr. Padgett was entitled to at least some benefits. After the court issued its decision, it learned that Mr. Padgett had died after the case was submitted to the court but prior to the issuance of the court's decision. Mrs. Padgett then filed an accrued-benefits claim and sought substitution on Mr. Padgett's disability benefits claim in order to protect her

interest in the accrued benefits. The Veterans Court, however, withdrew its opinion, vacated the underlying Board decision, and dismissed the appeal.

On appeal, we held that the Veterans Court should not have vacated its decision in Mr. Padgett's favor. Once the case was submitted to the Veterans Court, we explained, the case was in a posture such that it was appropriate to give the accrued-benefits claimant the benefit of the court's decision by issuing the judgment nunc pro tunc as of the date of Mr. Padgett's death. In fact, we stated, failure to give effect to the Veterans Court's decision in Mr. Padgett's case would be improper because "it would disregard the otherwise final determination of issues relating to the accrued-benefits claim." Padgett, 473 F.3d at 1369.

We then addressed the related question whether Mrs. Padgett, as the accrued-benefits claimant, should be substituted for Mr. Padgett on the appeal. In order to decide that issue, we addressed whether the "continuing relevance and preclusive effect" of the issues decided in Mr. Padgett's appeal were sufficient to satisfy the "case or controversy" requirement applied by the Veteran's Court; whether Mrs. Padgett had standing to pursue the appeal under 38 U.S.C. § 7266(a); and whether substitution would be consistent with justice and fairness to the parties. Padgett, 473 F.3d at 1370. Based on Mrs. Padgett's entitlement to the benefits of the final judgment in Mr. Padgett's favor in the appeal, we held that all three requirements were satisfied. Accordingly, we directed the Veterans Court to substitute Mrs. Padgett on the appeal and to enter its judgment nunc pro tunc as of the time of Mr. Padgett's death. We characterized those steps as "further[ing] judicial and administrative economy by not

requiring relitigation and readjudication of issues already decided by the Veterans Court." Id.

In a recent decision, Hyatt v. Shinseki, 566 F.3d 1364 (Fed. Cir. 2009), we reaffirmed the approach employed in Padgett. In Hyatt, as in Padgett, the veteran-claimant died after a favorable decision from the Veterans Court, but before issuance of the judgment. Mrs. Hyatt, the widow of the veteran-claimant, sought to protect her rights to accrued benefits by requesting that she be substituted on her deceased husband's benefits claim and having the Veterans Court reissue its judgment nunc pro tunc as of the date of her husband's death. She contended that she was entitled to that relief because it would render additional records part of her husband's claim file, thereby making them available to support her accrued-benefits claim.

The Secretary asserted that Mrs. Hyatt's request was properly denied because she was "still a long way from establishing entitlement to benefits." This court explained, however, that "the inquiry is not whether there will be an imminent grant of benefits, but whether [a claimant] is able to show a 'personal stake'" in the outcome. Hyatt, 566 F.3d at 1369. We held that Padgett stands for the proposition that where an accrued-benefits claimant is seeking to be substituted for the purpose of requesting that a decision be reissued nunc pro tunc, Padgett requires only that the decision have "continuing relevance" such that, but for the nunc pro tunc relief, the accrued-benefits claim would be adversely affected. Thus, we held that "the accrued benefits claimant need only show that the failure to reissue the decision nunc pro tunc will adversely affect her claim in some way." 566 F.3d at 1369.

Applying that test in the <u>Hyatt</u> case, we concluded that the withdrawal of the Veterans Court's decision would not adversely affect the accrued-benefits claimant because the Veterans Court's decision could not materially assist Mrs. Hyatt in prosecuting her claim. We noted that even if the Veterans Court's judgment had been issued <u>nunc pro tunc</u>, Mrs. Hyatt would not have been able to rely on any new material that was not already in the claims file. We therefore concluded that Mrs. Hyatt could not benefit from being substituted on her husband's claim, and for that reason she lacked standing to be substituted on the underlying claim.

In the Davis/Stanback case, Ms. Stanback seeks to take advantage of the rule articulated in <u>Padgett</u> and <u>Hyatt</u> and to be substituted for Mr. Davis in order to facilitate the prosecution of her accrued-benefits claim.[2] The benefit to Ms. Stanback from having the Veterans Court's decision remain in effect is that the decision establishes that the medical examiner erred in concluding that Mr. Davis had never had a formal diagnosis of post-traumatic stress disorder and that the examiner failed to address several of the appellant's alleged stressors. The Veterans Court's decision thus removes a significant roadblock from Ms. Stanback's path to obtaining benefits based on the evidence in the file at the time of her father's death. For that reason, vacating the court's opinion would have an adverse effect on Ms. Stanback, and under the test

---

[2]    The government argues that Ms. Stanback failed to file a timely claim to her father's accrued benefits and that for that reason this court should reject her claim. In response, she contends that her filings with the Veterans Court during 2007 were sufficient to constitute an informal claim for accrued benefits. The Veterans Court did not address that issue; accordingly, we will assume for present purposes that Ms. Stanback has preserved her rights as an accrued-benefits claimant and leave it to the Veterans Court on remand to determine whether her filings before that court were sufficient to preserve her rights in that regard.

applied in Padgett and Hyatt she therefore has standing to be substituted in place of the veteran-claimant. Because we have held that substitution of an accrued-benefits claimant is appropriate when the veteran-claimant dies after a case has been submitted and the denial of substitution would adversely affect the accrued-benefits claim, we hold that, assuming Ms Stanback has preserved her rights as an accrued-benefits claimant, she is entitled to substitution on her father's claim and to the benefits of the Veterans Court's decision in his favor.

II

Ms. Stanback seeks substitution on Mr. Davis's claim not only to pursue an accrued-benefits claim under 38 U.S.C. § 5121(a), but also to prosecute an EAJA claim for attorney fees. In the companion case, Ms. Harris likewise requests that she be substituted for her deceased father, Donald Phillips, in order to pursue an EAJA claim stemming from his disability benefits claim.

EAJA provides that a "prevailing party" shall be awarded attorney fees unless the government's position was "substantially justified." 28 U.S.C. § 2412(d)(1)(A). Ms. Stanback asserts that the Veterans Court's December 7, 2006, remand order made Mr. Davis a prevailing party and that because the Secretary confessed error in that proceeding, the government's position was not substantially justified. See Former Employees of Motorola Ceramic Prods. v. United States, 336 F.3d 1360, 1366 (Fed. Cir. 2003) ("where the plaintiff secures a remand requiring further agency proceedings because of alleged error by the agency, the plaintiff qualifies as a prevailing party . . . without regard to the outcome of the agency proceedings where there has been no retention of jurisdiction by the court"). Similarly, Ms. Harris argues that the Veterans

Court's December 7, 2006, order granting the joint motion to remand rendered Mr. Phillips a prevailing party for EAJA purposes.

The Veterans Court ruled that because the veteran-claimants died before the mandate issued in their cases, the proper course was for the court to recall the issued judgments and mandates. Because the court's actions resulted in vacating the decisions in the veterans' favor, the court held that the veterans no longer qualified as prevailing parties, and it therefore dismissed the EAJA applications. According to the Secretary, the Veterans Court properly recalled its mandates in both cases because the court's decisions in the veterans' favor were "rendered a nullity" when the veterans died. But that argument reflects an overly formalistic view of the decisional process that is contrary to the policies underlying the EAJA statute.

In both of the cases before us, the Veterans Court ruled in favor of the veteran-claimants pursuant to a joint motion to remand (in the Phillips/Harris case) or a confession of error by the Secretary (in the Davis/Stanback case). It is clear the parties anticipated that the court would rule in accordance with their agreed-upon disposition, as the court did in both cases. It is likewise clear that no further appellate proceedings were contemplated. In particular, there was no realistic likelihood that the government would seek further review of the expected adverse decisions, and indeed the government did not seek further review in either case. In short, both cases were fully submitted by the time of the veterans' deaths,[3] and in Mr. Davis's case the court had

---

[3] We reject the government's argument that Mr. Phillips's appeal was not "submitted" at the time of his death. An appeal is normally regarded as "submitted" after oral argument, if there is one, or after the time for filing a reply brief, if there is no oral argument. In this case, however, the parties submitted the appeal based on a joint

issued its opinion and judgment; all that remained for the court to do in Mr. Davis's case at the time of his death was to issue its mandate.

Under those circumstances, the claimant's death should not deprive his estate or representative of the right to seek an EAJA award. In each case, the attorney's work was completed and the government's position was set forth prior to the claimant's death; the court's subsequent decision provided the basis for the argument that the claimant was a prevailing party and should be entitled to attorney fees. The fact that it was later discovered that certain events in each appeal occurred after the claimant's death—the issuance of the court's mandate in the Davis/Stanback case, and the issuance of the court's judgment and mandate in the Phillips/Harris case—should not deprive the claimant's estate of the right to recover fees based on the parties' conduct that was complete when the case was submitted.

EAJA is a remedial statute. See Scarborough v. Principi, 541 U.S. 401, 406-07 (2004). "The basic federal rule is that an action for a penalty does not survive, though remedial actions do." Faircloth v. Finesod, 938 F.2d 513, 518 (4th Cir. 1991). The Veterans Court, like other courts, has held that an EAJA claim survives the death of the party to the underlying claim. Cohen v. Brown, 8 Vet. App. 5, 7 (1995); see also Estate of Woll by Woll v. United States, 44 F.3d 464, 467-68 (7th Cir. 1994); In re Davis, 899 F.2d 1136, 1143 n.15 (11th Cir. 1990); Hoffman v. Heckler, 656 F. Supp. 1136, 1137 (E.D. Pa. 1987). The Veterans Court in Cohen found persuasive the reasoning that

---

motion for remand, and no oral argument or reply brief was contemplated. The case was thus "submitted" at the time the joint motion was filed, because all that remained was for the court to rule on the motion.

"[p]recluding attorneys from receiving attorney's fees if their clients died before the filing of attorney's fees motions would discourage attorneys from representing sick people entitled to benefits" and rejected the argument that "the right to a legal fee under [EAJA] dies with the aggrieved party." 8 Vet. App. at 7. The court concluded that "[i]t is equally true, in the context of veterans benefits cases, that precluding the award of EAJA fees where a veteran has died would discourage representation of disabled, ailing, or aging veterans. Congress did not intend such a result." Id.

The Secretary argues that Cohen is inapplicable to the Davis/Stanback and Phillips/Harris cases because Mr. Cohen had filed an EAJA claim prior to his death, while Mr. Davis and Mr. Phillips had not. We conclude that neither the rationale of Cohen nor the policies underlying EAJA support adopting that limitation on the general principle that EAJA claims survive the death of the original claimant. To the contrary, there are strong policy reasons for allowing the recovery of attorney fees to which a claimant is entitled even if the EAJA claim is not filed until after the claimant's death.

If the right to recover fees on an EAJA claim survives the death of the veteran, there is no reason to hold that the veteran must survive until the EAJA application is filed in order for the veteran's estate to have the right to pursue an EAJA award. Congress enacted EAJA to address the "concern that persons may be deterred from seeking review of, or defending against, unreasonable governmental action because of the expense involved in securing the vindication of their rights." Sullivan v. Hudson, 490 U.S. 877, 883 (1989) (internal quotation marks omitted); see Congressional Findings and Purposes, Pub. L. No. 96-481, § 202, 94 Stat. 2325 (1980) (codified at 5 U.S.C. § 504 note) ("It is the purpose of this title . . . to diminish the deterrent effect of seeking

review of, or defending against, governmental action."). To bar EAJA awards when the claimant is entitled to an award but dies before filing an EAJA claim would add to the risks run by attorneys who represent veterans in disability claims, without any apparent competing benefit or justification. As the Senate Committee on the Judiciary explained, "The objective of EAJA is to eliminate financial deterrents to individuals attempting to defend themselves against unjustified Government action. Veterans are exactly the type of individuals the statute was intended to help." S. Rep. No. 102-342, at 39 (1992) (footnotes omitted); see also Jones v. Brown, 41 F.3d 634, 636 (Fed. Cir. 1994). Therefore, we hold that an EAJA claim survives the death of the veteran, regardless of whether the EAJA application was actually filed by the veteran-claimant prior to his death.

With respect to the issue of substitution, the Veterans Court interpreted this court's decision in Padgett as limited to cases involving accrued benefits, and held that "[o]nly a qualified accrued-benefits claimant may substitute for a veteran in a compensation claim and receive nunc pro tunc relief." Accordingly, the court ruled that Ms. Stanback and Ms. Harris could not serve as representatives for purposes of prosecuting the EAJA claims because they were not accrued-benefits claimants. Aside from the point that Ms. Stanback argues that she submitted an informal claim as an accrued-benefits claimant—an argument the Veterans Court has not addressed—there is no need for the representative of an estate to have a separate claim in order to prosecute the deceased claimant's EAJA claim. Subject to their being determined to be

proper representatives of the claimants' estates, Ms. Stanback and Ms. Harris are therefore entitled to substitution for purposes of prosecuting their fathers' EAJA claims.[4]

## III

The judgment in Mr. Davis's case issued before his death. The relief required in that case is therefore simply to permit the substitution of Ms. Stanback and reinstate the judgment and mandate. The judgment in Mr. Phillips's case, however, did not issue until after his death. According to the Secretary, that is an additional reason Ms. Harris cannot be substituted for Mr. Phillips. We disagree. Even if the Veterans Court considers it necessary in such a case to recall the mandate, we held in Padgett, in an analogous setting, that nunc pro tunc relief is appropriate when it is necessary to effectuate an otherwise proper substitution. 473 F.3d at 1367. That rule applies equally here. As the Supreme Court has explained, "where the delay in rendering a judgment or a decree arises from the act of the court . . . the judgment or the decree may be entered retrospectively, as of a time when it should have or might have been entered up." Mitchell v. Overman, 103 U.S. 62, 64-65 (1880). Although the power to issue a judgment nunc pro tunc is equitable in nature, the Court held that "it is the duty of the court to see that the parties shall not suffer by the delay." Id. at 65. In Padgett, we concluded that granting nunc pro tunc relief in such a case "is consistent with, if not compelled by, the statutory scheme for awarding benefits to veterans and their survivors." 473 F.3d at 1369. Accordingly, while the Veterans Court may elect to recall

---

[4]     The Veterans Court did not address or decide whether Ms. Stanback and Ms. Davis are proper representatives of the veterans' estates, and to the extent that issue is contested, we leave that issue for the court to decide on remand. In addition, we do not address the merits of the EAJA claims in these two appeals, but leave merits-related issues to the Veterans Court to address on remand.

its mandate when it discovers that the veteran-claimant died before the issuance of the court's judgment, the proper course in a case such as Mr. Phillips's, in which the case was fully submitted prior to the veteran-claimant's death, is for the court to issue its judgment <u>nunc pro tunc</u> as of the date of death.

<u>REVERSED and REMANDED</u>.